**\*\*E-filed 06/09/2010\*\***

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

SURF AND SAND, LLC,

        Plaintiff,

  v.

CITY OF CAPITOLA, et al.,

        Defendants.
_____/

No. C 09-5542 RS

**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**

## I. INTRODUCTION

The residents of a typical mobile home park own their homes but lease the spaces on which the homes sit. Because the cost of relocating a mobile home generally makes it economically unfeasible to do so, rising space rental rates pose a particular threat to mobile home owners. California municipalities have attempted to minimize that threat by enacting rent control ordinances and other measures designed to ensure that mobile home owners do not lose the investment they make when purchasing mobile homes.

Plaintiff Surf and Sand, LLC owns Surf and Sand Mobile Home Park ("the Park"), which is located on ocean front property in the City of Capitola. Although the value of a mobile home structure typically is measured in tens of thousands of dollars, mobile homes in the Park have changed hands for prices in the neighborhood of $500,000. Plaintiff contends that this difference in

value is a "premium" created by rent control, which effectively represents the future value of below-market rental rates. Defendants contend it is nothing more than "placement value"—additional value resulting from the scarcity of mobile home sites, which is entirely independent of rent control.

Regardless of what economic mechanisms create this value, the resulting dilemma is clear. Mobile home residents, whether they have paid those high prices or have merely lived in the homes while they appreciated, perceive the value as something they own. Park owners, conversely, view themselves as entitled to the benefits of increasing land values. This is the second of two related actions Surf and Sand has brought seeking relief from the economic loss it contends it has suffered through the application of the ordinances governing the Park. In the first action, ("*Surf and Sand I*"), plaintiff contended that its plans to subdivide the Park and convert it to resident ownership were thwarted by requirements imposed by Capitola. The Court ultimately granted a motion to dismiss without leave to amend; a decision recently affirmed by the Ninth Circuit. In this action, Surf and Sand challenges Capitola's refusal to approve its application to close the Park entirely. Under a number of constitutional theories, Surf and Sand seeks damages and/or declaratory or mandamus relief that would allow it to proceed with the closing of the Park on terms acceptable to it.

While *Surf and Sand I* was subject to dismissal because, among other things, plaintiff had not gone forward with its attempt to subdivide, this action stands on a different footing as plaintiff has completed the process of applying to close the Park, and has been rejected. Thus, while certain elements of plaintiff's claims are subject to dismissal as explained below, the remainder of plaintiff's claims for relief can go forward.

II. BACKGROUND

Surf and Sand, LLC is owned by members of the Reed family. The Reeds established the Park more than 50 years ago. At that time, the property was located in an unincorporated portion of Santa Cruz County, and was not subject to any form of rent control. In or around 1982, the county adopted a rent control ordinance, not challenged here by Surf and Sand. In the mid-1990s, the Park was incorporated into the City of Capitola and became subject to Capitola's then-existing Rent Control Ordinance ("RCO"). In or about 1993, Capitola adopted a Park Closure Ordinance

("PCO") that requires a mobile home park owner to undertake various measures intended to mitigate the consequences to tenants of any closure of a mobile home park. Surf and Sand never challenged the constitutionality of either the RCO or the PCO prior to filing *Surf and Sand I*.

Here, as in *Surf and Sand I*, plaintiff contends that although the RCO permits some rent increases, it does not permit increases that would reflect the "true" value of the underlying real property. As a result, Surf and Sand argues, it is effectively providing a "massive subsidy" to its tenants with respect to the rent those tenants pay. Additionally, Surf and Sand alleges that tenants have been able to sell their mobile homes to new owners for prices that reflect that "discounted future rent" rather than the actual value of the home.

At some point in time, Surf and Sand concluded that the only "economically feasible" method of recovering its perceived value in the property was to subdivide the Park. Shortly after Surf and Sand announced its intention to subdivide, Capitola adopted an "urgency" ordinance regulating the conversion of mobile home parks to resident ownership (the "Conversion Ordinance"). *Surf and Sand I* challenged the adoption of the Conversion Ordinance as an improper attempt to prevent Surf and Sand from realizing its property value through a subdivision. As noted, that action was dismissed and the dismissal has been affirmed on appeal.

While the appeal of *Surf and Sand I* was pending, plaintiff applied for a permit to close the Park, rather than subdividing it. Surf and Sand alleges that it engaged in a lengthy and expensive process to meet various requirements imposed by Capitola, only to have the closure permit denied. It is apparent that Capitola does not necessarily oppose closure of the Park *per se*, but that it is attempting to ensure that Park residents are compensated in amounts consistent with the prices at which homes in the Park have sold in recent years. Conversely, it appears that Surf and Sand has no objection to providing *some* relocation assistance to Park residents, but that it is not willing to see the bulk of the appreciation in the value of its land effectively transferred to the Park tenants.

III. DISCUSSION

A. <u>Facial Challenges</u>

Defendants move to dismiss to the extent that Surf and Sand intends to proceed on a facial challenge to the RCO, the PCO, or the Conversion Ordinance. Defendants argue correctly that any such claims not only are time-barred, but also were resolved against plaintiff in *Surf and Sand I*. In response, Surf and Sand insists that it is only challenging the constitutionality of the various ordinances on an "as applied" basis. Notwithstanding some language in the complaint that appears to put forth a facial challenge,[1] plaintiff's disclaimer of any intent to do so will be accepted.[2]

B. <u>Ripeness</u>

Consistent with their position in *Surf and Sand I*, defendants contend that plaintiff's public takings and substantive due process claims are not ripe under *Williamson County Regional Planning Comm'n v. Hamilton Bank*, 473 U.S. 172 (1985) until and unless it has first sought compensation in state court. This Court's discussion from *Surf and Sand I* remains relevant:

> Surf and Sand's primary response to this argument is its assertion that ripeness under Williamson is only a consideration with respect to its public takings claim. Surf and Sand argues there is no requirement that it first seek "state compensation" under its due process, equal protection, or private takings claims.
> In response, Capitola insists that the Ninth Circuit has applied the *Williamson* ripeness analysis to due process and equal protection claims. See, e.g., *Shelter Creek Development Corp. v. City of Oxnard*, 838 F.2d 375, 379 ("equal protection claims and substantive due process claims are to be analyzed for ripeness in the same way that regulatory taking claims are analyzed.") Although it appears claims other than those for public takings may very well be subject to the first prong of a *Williamson* analysis (i.e., has there been a final decision as to the applicability of the regulation

---

[1] See, e.g., ¶ 98 ("Plaintiff asserts a facial takings claim").

[2] The Court solicited briefing on the question of whether the complaint should be seen as a time-barred challenge to the RCO notwithstanding Surf and Sand's characterization of it as an as-applied challenge to one or more ordinances. For different reasons, both sides responded that it would be incorrect to see the complaint as presenting only an untimely claim that enactment of the RCO created a "premium." Although it remains unclear when Surf and Sand's alleged injury took place, dismissal on statute of limitations grounds is not warranted at this juncture.

to the plaintiff's property), it is far less clear that such claims would be subject to the second prong of the *Williamson* inquiry (i.e., whether the plaintiff is unable to receive just compensation under state procedures). As Surf and Sand points out, it would be illogical to require a plaintiff to seek compensation in state proceedings for a due process violation, because such violations, if proven, are not remedied by "compensation." *See Lingle v. Chevron U.S.A., Inc.,* 544 U.S. 528, 543 (2005) ("Due process violations cannot be remedied under the Takings Clause, because 'if a government action is found to be impermissible-for instance because it fails to meet the 'public use' requirement or is so arbitrary as to violate due process-that is the end of the inquiry. No amount of compensation can authorize such action.'")

*Surf and Sand I,* Order dated February 13, 2008, at 5:10-6:1.

Here, Surf and Sand concedes that its public takings claim is not technically ripe, but urges that it be relieved of the requirement to seek a remedy in state court because, it contends, the state judiciary is so hostile to park owners that it would be futile for Surf and Sand to seek relief there. Although ripeness may be a prudential, rather than jurisdictional, requirement, Surf and Sand has not shown that it would be appropriate for this Court to adjudicate the claim at this point in time. Accordingly, the public takings claim is dismissed, without prejudice to its re-assertion if and when it ever ripens. Defendants' motion to dismiss the substantive due process claim as unripe is denied.[3]

C. Equal Protection

Defendants contend that Surf and Sand's allegations that it has been denied equal protection fail because it cannot identify any similarly situated park owners who have been treated differently. The complaint, however, specifically avers differential treatment imposed on Surf and Sand. See,

---

[3] As an additional challenge to Surf and Sand's public takings claim, defendants contend that nothing has been "taken" from plaintiff because, they insist, under *Penn Central Transp. Co. v. City of New York*, 438 U.S. 104 (1978), mere denial of the right to an alternative use of property is not a taking. Plaintiff responds that language in *Yee v. City of Escondido*, 503 U.S. 519 (1992), supports the notion that denial of the right to close a mobile home park *is* a taking. See 503 U.S. at 528 ("A different case would be presented were the statute, on its face or as applied, to compel a landowner over objection to rent his property or to refrain in perpetuity from terminating a tenancy.") While defendants may be correct that the *Yee* language is technically dicta, it is also the clear import of that decision that a takings claim may be based on regulation that "compel[s] a landowner over objection to rent his property or to refrain in perpetuity from terminating a tenancy." As that is precisely what Surf and Sand has alleged here, this would not provide an additional basis to dismiss the claim were it ripe.

e.g. Complaint ¶¶ 70-79. Defendants seem to be arguing that other park owners are not similarly situated because they have not applied to close their parks.  At the pleading stage, however, plaintiff's allegations of disparate treatment are sufficient.   The gravamen of Surf and Sand's claim is that the City treats park owners who are willing to relinquish their claims to the increase land values differently than those who are not willing to do so.  Whether the City is justified in so acting cannot be decided on a motion to dismiss. [4]

D. "Legitimate Purpose"

Defendants contend that plaintiff's substantive due process and private takings claims necessarily fail because the conduct challenged was rationally related to legitimate government purposes.  Citing *Lucas v. South Carolina Coastal Council,* 505 U.S. 1003, 1025 n. 12 (1992)  Surf and Sand argues that it is not enough that the ordinances *purport* to have been enacted for legitimate purposes, because only legislators with "stupid staff" would fail to so justify all enactments.  Defendants argue conversely that it cannot be sufficient simply to allege a law was enacted with an improper purpose, because only a "stupid pleader" would fail to survive a motion to dismiss.  Defendants' argument, however, rests on its view that it was "only" enforcing state law and that denial of the closure application "did not transfer property to anyone."   The allegations of the complaint are that defendants went far beyond what state law required for the deliberate purpose of ensuring that the appreciated value of the land is, in effect, permanently transferred from the park owners to the tenants.   Whether that theory will ultimately be viable remains to be seen, but the pleading stage is not the appropriate juncture to call that question.

---

[4] Surf and Sand also contends its equal protection claim survives under the "class of one" theory recognized in *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000).  Even a "class of one" requires a plaintiff to allege that he or she "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Id.* at 564.  It is not clear, therefore, that the class of one argument adds anything to the analysis.

6

### E. Procedural Due Process

Surf and Sand alleges various improprieties in the way its closure application was handled, and argues that the process essentially was a sham. Among other things, Surf and Sand contends that defendants violated the Brown Act, Cal. Gov.Code, §§54950 et seq. Defendants argue that Surf and Sand has neither properly alleged Brown Act violations nor is it seeking the proper remedy for such violations of administrative mandamus. It may be that plaintiff has not adequately alleged Brown Act violations *per se*, but its allegations are sufficient to state a claim for denial of procedural due process.

### F. Pullman "abstention"

Defendants alternatively urge the Court to exercise "*Pullman* abstention." See *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496 (1941). Under that doctrine, a federal court has discretion to *defer* deciding federal constitutional issues where there is reason to believe that permitting the state courts to resolve unsettled state law questions touching on sensitive social policy first may obviate the need to reach the federal issues. See *Smelt v. County of Orange* 447 F.3d 673, 679 (9th Cir. 2006) (*Pullman* abstention appropriate where "(1) The complaint touches a sensitive area of social policy upon which the federal courts ought not to enter unless no alternative to its adjudication is open. (2) Such constitutional adjudication plainly can be avoided if a definitive ruling on the state issue would terminate the controversy. (3) The possibly determinative issue of state law is doubtful.")

Defendants contend that if the Court stays the federal claims under *Pullman* and requires Surf and Sand to litigate its state claims in state court, there are two possible outcomes. Either the state court will agree with Surf and Sand and permit it to close the park, or the state court will find that the City properly followed state law in denying closure. In the latter event, defendants contend, plaintiff will only have claims against the state, not the City.

Surf and Sand's argument that defendants have not shown there are unsettled issues of state law implicating sensitive social issues, overlooks the fact that the land use and rent control issues at the heart of this dispute could be so characterized. Nevertheless, defendants have not established

that *Pullman* abstention is the most appropriate course of action to take here. It is unclear whether proceedings in state court would dispose of or narrow Surf and Sand's federal constitutional claims to the degree or in the manner defendants suggest, and besides the delay would be lengthy and indefinite.

G. <u>Individual defendants</u>

The moving papers requested dismissal of the individual council members based on qualified immunity. Given the allegations of the complaint, it cannot be determined as a matter of law at the pleading stage that the individual defendants reasonably believed they were acting lawfully. Surf and Sand also points out that they are properly named in the state law mandamus claim. The reply brief does not mention the individual defendants. The motion to dismiss them is accordingly denied.

## IV. CONCLUSION

The motion to dismiss is granted with respect to the third claim for relief for a public takings, without prejudice to reassertion of that claim should it ripen. The motion is otherwise denied.

IT IS SO ORDERED.

Dated: 06/09/2010

RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE